Our last case this morning is United States v. Kuczora. Mr. McQuaid.  The defendant's sentence and his sentencing hearing were unfair in this case, and this court should remain in this case for resentencing. And I'll begin at the beginning. At the outset of the sentencing hearing, the court went about setting the guideline range as it should in every sentencing case in a criminal case. The court went through that process of setting the guideline range with the government and the defense without any dissent from the court, without any disagreement about what was going on with the setting of the guideline range with the parties and what was ultimately proposed and agreed to. The court had no issue at that time with the advisory guideline sentencing range of 33 to 41 months, and continued through the aggravation and mitigation process of the sentencing without raising any issue in regards to anything about the guidelines, the range that had been set, and any enhancements that were granted or not even talked about. Ultimately, in the end, we realized that the judge had an issue of some sort, a problem of some sort with the advisory guideline range in this case. It went 40% over the 41 months, approximately 40%, giving Mr. Kuczora a 70-month sentence outside of the high end of the guideline range. In its ruling on the 70-month sentence, the court used numerous factors that were guideline enhancements, considered by the guidelines, in justifying giving him a sentence of 29 months over the bottom. Are you saying it's never appropriate for a court to consider guideline factors if they overlap with the 35-53 factors in opposing a sentence? I am not, because in that case, clearly that's what the judge did do. We know that from the record that he was basically applying those under a 35-53 analysis. The problem is, Your Honor, is that sophisticated means, impact to the victims, acceptance of responsibility, those were all things that were incorporated specifically in guideline enhancements that, as acceptance was addressed at the time the guidelines were set. Ultimately, I will discuss this, obviously, at some point the court, under 35-53, took away those three points that he got for acceptance of responsibility. But the impact upon the victim, there is an enhancement for that, that was not contemplated by the parties or by probation at the time the guidelines were set. Under 35-53, the court, in this particular case, chose to say, because of the impact in this particular case, I find significant impact upon these victims, I'm going to give him a sentence greater than the guidelines, basically subverts the entire adversarial process of sentencing. Because these should have been addressed at the beginning, if the court was feeling that these were, in his mind, the reasons that, in aggravation, that the guidelines shouldn't apply, or a guideline sentencing range sentence shouldn't apply, you can't just do an end run on the guidelines, then under 35-53, take away any opportunity for the parties to address these matters in aggravation and or mitigation. But how was it taken away if you had the opportunity in sentencing memos, these issues were raised in the pre-sentence investigation report to which there was no objection, you may not have anticipated that he would enhance the sentence above the guidelines, but the factors themselves were set forth in the pre-sentence investigation. There was a hearing where the victims, some of the victims, a couple came in and testified, you had the opportunity to cross-examine, you had the opportunity to address the impact on those victims, even more significantly because the victims themselves were there testifying and subject to the adversarial process. So how can you say this subverts the adversarial process? Well, I'd say, as far as the acceptance, I'm not saying that did. I guess I am saying it did, because at the beginning, there was no disagreement between, at the time, at that time, between the probation department and the PSI, which I can discuss in a second. The government didn't ask for it, and the defense got it, so I don't think that would be something that they would want to, we've moved past that. The defense had moved past that. They're not going to assume at that point, without any dissent from the court, that this is an issue, that acceptance is actually an issue. In the PSI, probation did take issue with it. The court had the pre-sentence report. The government had it, and ultimately it was agreed to at the time. The court didn't indicate that, you know, one sentence. I understand that the parties are agreeing to acceptance. I see what probation has written here. I've seen the pleadings. I'm not necessarily, I don't feel comfortable with that. Let's have it out. Let's address that right here on the record. I'm going to make a determination. The court said nothing about that, so I wouldn't say that. But the court said, in a technical sense, they had been met, because the defendant pled guilty and saved the government the burden of using its resources to go to trial. But he didn't feel, from a remorse standpoint, or the fact that the defendant was continuing fraudulent conduct, even after he had been charged, that he had acceptance of responsibility. And those factors were set forth in the PSR. I agree with Your Honor on the facts that are in the PSR. My only disagreement with the interpretation of acceptance of responsibility that the court said in this case, as it's like a technicality, it's almost as if he pleads guilty, which was the day of trial, which is, I would think, any court would always have a consideration of the timing of that. The government then had agreed to their one point, based on if the court was going to grant the two. The court had an opportunity, based on the reasons the court just, Your Honor, just indicated, to disagree with it. It's not a technicality. I don't believe that the enhanced or the guideline is a technical guideline. If you plead guilty before trial at any point in time, you're going to get the two points off. I think all those things that you've said that were clearly in the PSI about his, and probation mentioned it clearly in that particular enhancement portion of the PSI, that he was waffling, that he was not accepting responsibility. But the court never raised any issue with it at that time to allow the parties to argue it, and then the court would make a finding on that. It just went at the end saying what Your Honor just said, but I make this finding. We never had a, the parties never had a chance to argue it. There was no adversarial process as to that particular issue. Those were addressed in the sentencing memos, though, weren't they? The lack of remorse and the. . . They were. But I think what the court ultimately said, and I guess this is in hindsight, the court is saying at this point, I disagree with the acceptance, even though we all know, but at the time he didn't. He didn't, and it's not a technicality. All those reasons are a legitimate reason for the court, and that would be supported on review for not giving him the two points for acceptance, and then whatever happened to the third point would happen to the third point. I think it would go away, but that's not the point. The point is just because the defendant pled guilty prior to trial, whenever that may be, that's not necessarily, it's not just, okay, you're getting the two points. The court can say, it lightened the game. The court can say that I'm not feeling the remorse. You're still behaving in an illegal way, or you're not taking it seriously. So I think, again, I'm going to the end and knowing that's what the court thought. That's what the court thought, but there was nothing in between the beginning and setting of the guidelines to the end that gave any opportunity for the defense to deal with the fact that the court was thinking that already, and that was in his mind. That opportunity is always available. The defense is always on notice that the court may disagree with how the guidelines weigh and value the different facts of the case, and the court is under no obligation to say, here's my problem with this guidelines range ahead of time, that the parties know what the facts are and have to anticipate that the court's going to exercise Booker discretion differently based on anything that is in the record. I would say that 3553 factors, yes, Your Honor. I would say in this particular case, the court used three guideline enhancements that were not dealt with during the sentencing hearing to enhance his sentence, and I think it's a practical matter for a defense lawyer then to deal with the fact that we've got these guideline issues. They're resolved at that point without any dissent from the court. You're moving on to 3553. You're moving on to the practical issues that Mr. Krizora brought to sentencing. These particular, the three, the acceptance of responsibility, the sophisticated means, and the impact on victims are all covered under the guidelines. He used those three enhancements. But you seem to be arguing that the problem with using those factors under 3553A is that you didn't have the opportunity to address them to the court, but all of those factors were in the PSR and addressed to some extent in the government sentencing memo. So you were on notice of those factors and certainly had the opportunity when you were arguing 3553A factors to make those arguments to the judge. They should not have come as a complete surprise to defense counsel because they were in all of the papers, including the PSR, with respect to sentencing. I understand Your Honor's point, and I do have a, obviously, we do have a problem with notice as well. I've used up all my time, so thank you very much. Thank you. Mr. Krieger. Good afternoon, and may it please the Court. I'm Matthew Krieger on behalf of the United States. Judge St. Yves' question, I think, goes to the fundamental mistake in the appellant's position, which is that it is permissible under the 3553A factors to address aspects which the guidelines also address. That happens all the time. This Court has made clear that a court has certain obligations to meet its procedural requirements of sentencing. It has to calculate the guidelines correctly. There's no dispute that that was done here. It has to demonstrate that the guidelines are not mandatory, but instead the ultimate sentence is under 3553A. The Court did that here. And then the Court does need to demonstrate that it has carefully considered the guidelines and to the extent that there will be a departure from the guidelines to show that it's aware of that departure and to provide sufficient justification for that extent of the departure under the 3553A factors, and the Court did that here as well. The fact that there may be some overlap between the 3553A factors and a certain guidelines provision doesn't make it off the table. And I think there's an assumption laid in within the appellant's argument that, say, the impact on victims was fully captured by the 2B1.1B provision on substantial impact on victims.  There is an additional enhancement that could apply for a substantial financial harm on 5 or more victims or 25 or more victims. I think it's arguable whether that could apply here. The District Court very clearly could have made the determination based on the facts in front of him that he couldn't make that finding. The application notes to that provision speak of very certain types of financial harm, such as bankruptcy or an insolvency, and you need to show that that financial harm resulted from the particular fraud scheme. So that would take a certain amount of factual development that perhaps the District Court didn't think he had in front of him. But that doesn't mean that in considering the nature of the offense that a District Court shouldn't still consider other types of impacts on a victim that are not financial impacts, such as divorce, depression, emotional trauma. And the District Court here had heard from a number of victims personally, had also heard of victims through the PSR, that described the devastating impact of this fraud scheme on these victims. And the District Court was very much right to find that that impact was not fully accounted for by the guidelines. And so it's not accurate for the appellant to say that the District Court had done a sort of end-round around that guidelines provision. Likewise, on the number of victims, the particular enhancement that the court did apply, 10 or more victims, he considered that, but he then explained at pages 60 and 61 of the transcript that there were far more than 10 victims here. There were at least 68. And the District Court quite rightly should consider whether the guidelines are not sufficiently enhancing the sentencing range to take into account the full magnitude of the fraud scheme. The appellant hasn't mentioned some of the other reasons why the District Court gave for bearing above the guidelines, which were very proper reasons under 3553A. For example, under the nature of the offense, the District Court was disturbed by the length of this fraud scheme, spanning four years. There's no enhancement under the guidelines for length of scheme. Likewise, the District Court was very disturbed by the manipulative nature of this scheme. He did in an offhanded, not offhanded way, but in a quick way, mention the sophisticated nature of the scheme. But as with the other enhancements, to apply a sophisticated nature of the scheme, there's particular findings that need to be made, such as use of offshore accounts, or other things that perhaps the District Court found were not warranted by the facts before him. But there was a different aspect of the scheme that the guidelines don't encompass, which the District Court seemed to be very disturbed by here. That was the way that Mr. Cucsora had encountered its victims, had lied to them in a very calculated, scheming, manipulative fashion. So contrast this sort of fraud scheme with one, for example, a bank fraud scheme, where somebody maybe in a one-off encounter misrepresents his or her net worth on a bank application and therefore gets a loan to which he or she was not entitled. A one-off instance against a financial institution on paper. Contrast that with this scheme, where Mr. Cucsora was having repeated interactions with his victims, stringing them along, sensing their desperation, and yet preying on that. That's a different sort of fraud scheme. The District Court here could rightly say that that sort of fraud scheme, where you are really preying on another human being, warrants more punishment. As Judge St. Eves indicated, the lack of remorse was what disturbed the District Court judge. And that's different than acceptance of responsibility. They do overlap, but there's a different assessment to be made when you're assessing the nature and history of a defendant, as well as whether there's a need for specific deterrence and more just punishment under 3553A. Here the District Court both saw how Mr. Cucsora only pled guilty at the last moment, how he continued to minimize his conduct in the scheme, and how he engaged in yet another fraud scheme even after being charged. The guidelines don't take that into account, and the District Court was right to say that there should be more punishment because of that. The District Court also was disturbed by the advantageous upbringing that Mr. Cucsora had, that other defendants in the same criminal history category or similar circumstances may not have, as well as the District Court appeared to have a belief that general deterrence was needed to be served by a greater sentence for this sort of white-collar scheme. And that's a permissible judgment for the District Court to make. There's some reference in the defendant's papers to the in-camera submission, which I assume is the sentencing recommendation here. Was that shared with the parties or just given to the court? It was only given to the court, which is permitted under Rule 32. That's the common practice in the Eastern District of Wisconsin. Did either side request it? Only during this appeal is my understanding. Did the defendant receive it then? And as I've made inquiries as to how that happened, my understanding is that was given over in error. That's not typically disclosed by the court. I don't think that that issue really has any bearing on the ultimate issue in front of the court, however, because even if there was a mistake, say, in the calculation of the guidelines in that recommendation from the probation office, it didn't affect the actual sentencing during which the District Court correctly calculated the guidelines and then gave sufficient reasons for going above. The appellant discussed with you in various ways the notice that he believes he's entitled to, and I think as Judge Sykes indicated, the notice that's currently required after Booker is provided by 3553A itself. All defendants are under notice that sentencing will proceed by the factors in that statute, and this court has said that directly in Walker, that that's all the notice that a defendant is entitled to receive. But here the defendant certainly received more than that. In the plea agreement, it made very clear that the sentencing would occur under the 3553A factors. The court made that clear under the PSR. The PSR laid out all of the facts to which the 3553A factors were applied, and I think this is particularly critical. The PSR is supposed to set up the adversarial process. The parties receive a draft in advance. They can lodge objections if they think some factual statement in it is wrong, so that the court would know and the parties would know before the hearing what would be the factual dispute at sentencing. Here the defendant made no objection to any of the factual findings in the PSR. I see I've got one minute here. And then at sentencing, the court asked again, are there any factual disputes to what happened in the PSR? At page 8 of the sentencing transcript, the defendant said no, no dispute as to the facts. And so at that point, the facts were essentially determined for sentencing, and there would be no more need to litigate the facts again because the defendant didn't like how the judge was applying the 3553A factors to those facts. That doesn't give you a new right to re-litigate the facts just because you don't like how the judge is applying the factors. As the court pointed out, the defendant had the government sentencing memorandum, knew what the issues would be on appeal. And at bottom here, I believe the defendant just simply is not satisfied with the sentence he received, but it was very amply explained by the district court, and therefore the decision below should be affirmed. Thank you. Thank you. Mr. McQuaid, you are out of time, but if you have a few words to wrap up, you may have a minute. I think Mr. Kruger did a better job of explaining this sentence, and the over-guideline sentence, than the court did. I heard a lot of perhaps, a lot of apparently. I think that's all I have to say about this particular sentence. All right. Thank you. Our thanks to all counsel. The case is taken under advisement, and that concludes our calendar for today.